JASON M. FRIERSON
United States Attorney
Nevada Bar Number 7709
JEAN N. RIPLEY
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Tel: 702.388.5053
Jean.Ripley@usdoj.gov

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
CASSANDRA BARNUM
Senior Trial Attorney
150 M St. NE
Washington, DC 20002
Tel: (202) 305-0333
cassandra.barnum@usdoj.gov

*Attorneys for the United States*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>RENE MORALES,<br><br>                    Defendant. | Case No. 2:21-cr-00199-GMN-DJA<br><br>**Government's Sentencing Memorandum** |

**CERTIFICATION: The undersigned counsel hereby certify that this memorandum is timely filed.**

//

//

//

**INTRODUCTION**

In accordance with the Plea Agreement for Defendant Rene Morales (the "Plea Agreement"),[1] the government respectfully requests that this Court sentence Morales to six months of imprisonment and one year of supervised release. Morales pleaded guilty on June 12, 2023, to one count of negligent endangerment under the Clean Air Act, 42 U.S.C. § 7413(c)(4), and is subject to a statutory maximum of one year imprisonment and one year of supervised release. Morales has admitted that his failure to comply with applicable asbestos-removal requirements during the renovation of a facility in Las Vegas, Nevada placed others in danger of deadly respiratory illnesses caused by inhalation of airborne asbestos fibers. He has also admitted to lying to investigators and undergoing other efforts to cover up his crimes.

**STATEMENT OF RELEVANT FACTS**

**I.      Clean Air Act Work Practice Standards for Asbestos**

Pursuant to the Clean Air Act, and the regulations enacted thereunder, any demolition or renovation activity must comply with certain work practice standards for the removal of regulated asbestos-containing material (RACM) where the combined amount of RACM on facility components to be stripped, removed, dislodged, cut, drilled or otherwise disturbed is at least 160 square feet on facility components or at least 25 cubic feet off facility components where the length or area could not be previously measured.[2] Among other requirements, the owner or operator of such a demolition or renovation activity must:

> (i)      Have the facility thoroughly inspected for the presence of asbestos;
>
> (ii)     Provide the Environmental Protection Agency with ten-days written

---

[1] ECF No. 107.

[2] Presentence Investigation Report ("PSR"), ECF No. 60, ¶ 10; Plea Agreement ¶ 13; *see also* 40 C.F.R. §§ 61.145, 150.

notice of the intent to renovate or demolish a facility containing RACM;

(iii)   Remove all RACM from the facility prior to any activity that would break up, dislodge, or similarly disturb the material;

(iv)   Utilize a foreman, management-level person, or other authorized representative trained in compliance with asbestos regulations;

(v)   Cause certain asbestos materials to be adequately wetted in the removal process; and

(vi)   Cause certain asbestos materials, once removed, to be maintained at ground level, without dropping, throwing, sliding, damaging, or disturbing the RACM, and wet or contain the material in leak-tight wrapping.[3]

## II.   The Defendant's Illegal Renovation Activities

Defendant Rene Morales owns and operates Top Rank Builders Inc. ("TRB"), a construction company located in Las Vegas, Nevada.[4] Hector Vasquez is the General Manager of TRB.[5] In October 2017, TRB was hired to conduct renovations at a warehouse located at 2310 Western Avenue, Las Vegas, Nevada (the "Facility").[6] Prior to commencing renovations, both Morales and Vasquez were made aware of an asbestos survey that identified RACM at the Facility in quantities greater than 160 square feet, specifically, acoustic ceiling texture (ACT) and textured drywall.[7] The survey explained that TRB was legally required to remove all RACM in accordance with required safety protocols prior to any renovation activity.[8]

---

[3] Plea Agreement ¶ 13; *see also* 40 C.F.R. §§ 61.145.
[4] PSR ¶ 8; *see* Plea Agreement ¶ 14.
[5] PSR ¶ 8.
[6] PSR ¶ 13; Plea Agreement ¶ 14.
[7] PSR ¶ 13; Plea Agreement ¶ 14.
[8] PSR ¶ 13; Plea Agreement ¶ 14.

Vasquez also met with a licensed asbestos abatement professional in October 2017 once renovation activities had already commenced.[9] The abatement professional provided Vasquez with an estimate to remove and dispose of RACM at the facility, and also informed Vasquez that he would need to provide the EPA with ten days' notice of any RACM removal.[10] Vasquez did not respond to the proposal.[11]

Notwithstanding the survey and the RACM removal proposal, Morales and Vasquez failed to follow required RACM safety protocols in the course of renovating the Facility. In October 2017, Morales and Vasquez instructed untrained workers to remove approximately 1400 square feet of ACT and textured drywall from the Facility and place the material in approximately 150 bags marked "ASBESTOS."[12] Morales and Vasquez also instructed the workers to store the bags containing RACM in the northeast corner of the Facility.[13] The bags were not sealed, and RACM dust was released both inside and outside the Facility as a result of Morales' and Vasquez's failure to comply with the required RACM safety protocols.[14]

In an attempt to evade prosecution, Morales and Vasquez lied to both Clark County air quality regulators and special agents of the Environmental Protection Agency (EPA) about their involvement in the renovation activities at the Facility.[15] Specifically, Morales and Vasquez claimed that another individual previously employed by TRB was responsible for renovations at the Facility and had purchased the bags labeled "ASBESTOS."[16] Morales

---

[9] PSR ¶ 15.
[10] PSR ¶ 15.
[11] PSR ¶ 15.
[12] PSR ¶ 14; Plea Agreement ¶ 15.
[13] PSR ¶ 14; Plea Agreement ¶ 15.
[14] PSR ¶ 14; Plea Agreement ¶ 15.
[15] PSR ¶ 17; Plea Agreement ¶ 17.
[16] PSR ¶¶ 16-17; Plea Agreement ¶ 16.

also instructed Vasquez to purchase additional bags labeled "ASBESTOS," which Vasquez did.[17] The purpose of these efforts was so that Morales and Vasquez could falsely represent to investigators that the bags were for training purposes only.[18]

### III.   The Dangers of Asbestos

Morales' failure to follow any requisite safety standards in the course of the renovation activities caused asbestos dust to be released into the ambient air, which placed workers and others in danger of death or serious bodily injury.[19]

Asbestos is the general name for a group of six types of naturally occurring minerals, which consist of thin fibers grouped in parallel arrangements or bundles. Asbestos does not have an odor or taste, and is resistant to heat, fire, most chemicals, and biological processes.[20] When crushed, asbestos breaks up in to fine, microscopic fibers that may remain airborne for long periods of time.[21]

Asbestos is a "listed" hazardous substance and hazardous air pollutant.[22] Congress has found that medical science has established no minimum safe level of exposure to asbestos.[23] Similarly, the World Health Organization has concluded that "[a]sbestos is a proven human carcinogen. No safe level can be proposed for asbestos because a threshold is not known to exist."[24] The EPA and the International Agency for Research on Cancer

---

[17] PSR ¶¶ 16-17; Plea Agreement ¶ 16.
[18] *See* PSR ¶ 13; Plea Agreement ¶ 14.
[19] PSR ¶ 14; Plea Agreement ¶ 15.
[20] Agency for Toxic Substances and Disease Registry Division of Toxicology ("ATSDR"), *Public Health Statement Asbestos* at 1 (2001).
[21] *Id.* at 2.
[22] *See* 42 U.S.C. § 7412(b)(1) and 40 C.F.R. § 302.4.
[23] 20 U.S.C. § 3601(a)(3).
[24] World Heath Organization Regional Office for Europe, *Air Quality Guidelines for Europe* 133 (2d ed. 2000).

have also determined that asbestos is a human carcinogen.[25]

Asbestos can cause changes to the membranes surrounding the lung and has the potential to cause a number of diseases of the lungs, including asbestosis, lung cancer, and mesothelioma, a cancer of the membrane around the lungs. The likelihood of developing these health effects depends, among other things, on the level of asbestos in the air, the duration of exposure, and the size of the fibers inhaled.[26]

Asbestosis is a slow buildup of scar-like tissue in the lungs and in the membrane that surrounds the lungs. The scarred tissue loses its flexibility, which makes breathing difficult. The scarring may also reduce blood flow to the lungs which, in turn, can cause enlargement of the heart. The outward symptoms of asbestosis include shortness of breath, cough, abnormal breathing sounds, and decreased lung capacity. Asbestosis can eventually lead to disability and, in severe cases, death.[27] Asbestosis can take ten to twenty years to develop and may progress "long after exposure has ceased."[28]

Mesothelioma is a form of cancer that affects the membrane surrounding the lungs. It is rare in the general population and is associated specifically with asbestos exposures.[29] Cases of mesothelioma have been reported in individuals who have been occupationally exposed to asbestos, in individuals whose exposure was paraoccupational, and in individuals who were exposed environmentally.[30]

According to the ATSDR, statistically significant increases in lung cancer mortality have been reported in workers exposed primarily to chrysotile asbestos. The latency period

---

[25] ATSDR, *Public Health Statement Asbestos* at 5.
[26] *Id*. at 4.
[27] *Id*.; ATSDR, *Toxicological Profile for Asbestos* at 39.
[28] *Id*. at 41.
[29] *Id*. at 51.
[30] *Id*. at 52-53.

for asbestos-induced lung cancer is ten to forty years.[31] There is an even greater increase in lung cancer risk from asbestos exposure in people who smoke.[32]

<strong>RELEVANT PROCEDURAL HISTORY</strong>

On July 14, 2021, a grand jury returned an indictment charging Morales with conspiracy to violate the Clean Air Act in violation of 18 U.S.C. § 371 and five counts of violating the Clean Air Act in violation of 42 U.S.C. § 7413(c)(1) and 18 U.S.C. § 2.[33] On June 12, 2023, Morales pleaded guilty to one count of negligent endangerment under the Clean Air Act, 42 U.S.C. § 7413(c)(4).[34] Morales is scheduled to be sentenced by this Court on October 10, 2023.[35]

<strong>ARGUMENT</strong>

## II.    The Applicable Sentencing Guidelines

Consistent with the Plea Agreement, U.S. Probation calculated the applicable offense level in this case after the three-point reduction for acceptance of responsibility as 20, corresponding to a Guideline imprisonment range of 33 to 41 months.[36] The statutorily authorized maximum term for the offense is one year. *See* 42 U.S.C. § 7413(c)(4). Accordingly, the Guideline term of imprisonment is also one year.[37]

## III.    Term of Imprisonment

As set forth in the PSR, U.S. Probation is recommending a six-month custodial sentence.[38] Given the particular circumstances present here, a six-month custodial sentence

---

[31] *Id.* at 49.
[32] *Id.*
[33] ECF No. 1.
[34] ECF No. 52.
[35] ECF No. 51.
[36] Plea Agreement, ¶¶ 22-23; PSR ¶ 77.
[37] USSG § 5G1.1(a).
[38] PSR at 19.

1 is sufficient, but not greater than necessary, to reflect the seriousness of the offense, afford

2 sufficient deterrence for similar criminal activity, and promote respect for federal laws

3 governing environmental crimes in this District.

A. <u>Need for the Sentence to Reflect the Seriousness of the Offense</u>

As outlined in the sections above, the serious nature of the offense and the circumstances of the harm potentially inflicted upon the workers and the community warrant a custodial sentence for this defendant. By his actions and failures to act, Morales purposefully flaunted his legal obligation to protect workers and community members from toxic airborne asbestos fibers. Morales' crimes are not mere technical regulatory violations; by hiring untrained workers to conduct renovations without asbestos precautions, the defendant made a purposeful, reckless, and self-interested choice to endanger the safety of others for the sake of maximizing profit. This is a serious offense that warrants incarceration.

B. <u>The History and Characteristics of the Defendant</u>

Morales' conduct shows that this offense was not the behavior of a hapless worker unfamiliar with the requirements surrounding asbestos removal. Rather, his actions reflect an indifference towards the health of others. The motive in this case is simple: cutting corners on asbestos saves money. And as a result of Morales cutting corners, he placed the health of his workers and the community at large in jeopardy. Morales' conduct is compounded by his efforts to cover up his crimes. In order to evade prosecution, Morales and Vasquez lied to investigators, purchased "ASBESTOS" bags in order to deceive law enforcement, and attempted to blame their crimes on an innocent third-party. Given the nature of the offense, a custodial sentence is necessary to meet the needs of sentencing.

C.  <u>Deterrence and Need to Promote Respect for the Law</u>

A period of incarceration is necessary to ensure Morales will respect the law, thereby deterring future misconduct. It would further create general deterrence, sending a message to other construction professionals in this District and elsewhere that cutting corners on asbestos remediation is a serious offense with serious consequences. These offenses carry criminal penalties because the price of proper asbestos remediation is high, forcing renovators to choose between public safety and a wider profit margin. But absent stiff penalties, including incarceration, even the risk of criminal prosecution will not reliably counter the temptation to cheat. A sentence of six months of incarceration will deter those in the construction sector who, if they contemplated only a slap on the wrist, might view improper asbestos practices as sufficiently cost-saving to be worth the risk.

D.  <u>Sentencing Parity</u>

Courts routinely award custodial sentences to individual defendants who, like Morales, actively directed the endangerment of the lives of others – a fact that is revealed from a survey of recent environmental crimes cases. *See, e.g.*, *United States v. Laskin*, 1:21-cr-00067 (N.D.N.Y.) (defendant sentenced to ten months' incarceration after directing asbestos abatement workers to disregard required asbestos removal procedures); *United States v. Landell*, 21-cr-00154 (N.D.N.Y.) (in related case, defendant sentenced to eight months' incarceration after also directing asbestos abatement workers to disregard required asbestos removal procedures); *United States v. Margiotta*, 17-cr-000143 (D. Wy.) (defendant sentenced to eighteen months' imprisonment where the defendant directed construction of an oil-recycling facility before necessary safety measures could be implemented, resulting in the release of harmful air pollutants into the environment); *United States v. Chernis*, 16-cr-30033 (C.D. Ill.) (defendant sentenced to 37 months' incarceration where he directed

1    untrained workers to illegally remove dry asbestos piping in renovation activity).

2    **IV.    Term of Supervised Release**

3            Consistent with the PSR, the government further requests a one-year term of

4    supervision following any custodial sentence ordered by this Court.[39] The government

5    submits that the special conditions requested by U.S. Probation are appropriate for all the

6    reasons set forth in the PSR. The government also requests a special condition of

7    supervised release requiring the defendant to report to his probation officer all renovation

8    activity in Las Vegas he is involved in after his release. In the event that this Court does not

9    grant a custodial sentence, the government agrees with the defense that a significant

10   amount of community service is warranted.

11   / / /

12   / / /

13   / / /

14   / / /

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23

24   [39] PSR ¶ 152.

**CONCLUSION**

For the reasons set forth above, the government respectfully requests that the Court impose a sentence of six months of imprisonment and one year of supervised release.

Respectfully submitted this 5th day of October, 2023.

JASON M. FRIERSON
United States Attorney

 /s/ Jean N. Ripley
JEAN N. RIPLEY
Assistant United States Attorney

TODD KIM
Assistant Attorney General

 /s/Cassandra Barnum
CASSANDRA BARNUM
Trial Attorney